UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN J. CONLEY<br>aka "Jack" Conley | CR 05 79S<br>CR. No.<br><br>In Violation of 18 U.S.C. §§1343 and 2 |

**INDICTMENT**

The Grand Jury charges:

**COUNT I**

(Wire Fraud - 18 U.S.C. §1343)

At all times material to this Indictment:

**Scheme to Defraud**

1. Beginning in or about 1998, and continuing thereafter until in or about December 2001, in the District of Rhode Island, the Eastern District of Virginia, the Northern District of Illinois, the Northern District of California, the Western District of Michigan, the Eastern District of New York, and elsewhere, defendant JOHN J. CONLEY knowingly devised and intended to devise a scheme and artifice to defraud clients and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, in the amount of $285,000, more or less.

**Object of the Scheme**

2. The object of the scheme and artifice to defraud was for defendant CONLEY fraudulently to obtain money belonging to clients

through an advance fee scheme. An advance fee scheme occurs when the victim pays money to someone in reliance on false representations that they will receive something of greater value, such as a loan, contract, investment, or gift, and then receives little or nothing in return.

**Manner and Means**

3. It was part of this scheme that CONLEY used various corporate shells to lend his scheme an air of legitimacy. These businesses (the "Conley entities") included:

a. John Conley Investments, LLC;

b. John J. Conley Investments, LLC;

c. John Conley Incorporated;

d. John Conley, Ltd;

e. River City Investments, LLC;

f. River City Investors, LLC;

g. River City Affiliates, LLC; and

h. River City Capital, LLC.

4. It was further part of this scheme that CONLEY met with potential clients seeking financing for their businesses, and falsely told them that he managed a "hedge fund," or a "private merchant bank," which unnamed investors had funded with approximately $25,000,000, and which was immediately available to be invested in the potential clients' companies. Through a series of misrepresentations and lies, CONLEY assured the potential clients that he could secure prompt financing to fund their

businesses. In fact, CONLEY did not manage a hedge fund or private merchant bank, and did not have access to $25,000,000 or the amounts of capital being sought by his potential clients.

5. It was further part of this scheme that CONLEY told his clients that, to obtain funding, they first had to pay advance fees, in amounts ranging from $25,000 to $60,000, purportedly to cover CONLEY'S due diligence costs. In fact, CONLEY kept the majority of the advance fees for himself, and did not use the fees to pay the costs of due diligence as he represented to his clients he would.

6. It was further part of this scheme that at the time that the advance fees were paid, CONLEY would add an air of legitimacy to the scheme by having these clients sign a complicated and detailed "Letter of Intent."

7. It was further part of this scheme that after the clients supplied the advance fee, CONLEY never provided the promised funding, but rather made statements and engaged in acts designed to lull his clients into a false sense of security, and postpone their ultimate complaint to the authorities.

8. It was further part of this scheme that CONLEY, in order to lend an air of legitimacy to his scheme, would use some of his clients as unwitting references to other clients whom CONLEY targeted in the scheme.

9. It was further part of this scheme that CONLEY would give potential clients the names of family members as references,

without disclosing the nature of the familial relationship.

10. Relying on false promises and assurances made by CONLEY, these clients paid approximately $285,000 in advance fees to CONLEY. CONLEY took and squandered the advance fees and never obtained financing for these clients.

**Victim Entities and Persons**

11. ComAuction was a corporation, operating primarily out of the state of Michigan, established for the purpose of operating an internet auction site which would facilitate sales of commercial equipment. In 2000, ComAuction was seeking to raise approximately $5,000,000 in financing. Between on or about July 25, 2000, and March 2, 2001, and relying on CONLEY'S false representations, ComAuction paid CONLEY $60,000 in advance fees. ComAuction never received any funding from CONLEY.

12. Global Commerce Solutions ("GCS") was a Virginia-based company established for the purpose of providing software consulting services. Bruce Harrison was a significant investor in GCS. In 1999 and 2000, GCS was seeking approximately $10,000,000 in financing. On or about January 10, 2000, and relying on CONLEY'S false representations, GCS, using funds supplied to it by Harrison, paid CONLEY a $50,000 advance fee. GCS never received any funding from CONLEY.

13. Velocity Trade was a Virginia-based company established with the goal of facilitating high-speed securities transactions on the internet. In 1999 and 2000, Velocity Trade was seeking

approximately $750,000 in financing. On or about May 3, 2000,and relying on CONLEY'S false representations, Velocity Trade paid CONLEY an advance fee of $25,000. Velocity Trade never received any funding from CONLEY.

14. FirstScoop was a California-based business established to engage in executive recruiting. John Diaz was a principal in FirstScoop. In 2000 and 2001, FirstScoop and Diaz were seeking approximately $1,000,000 in financing. On or about June 12, 2001, and relying on CONLEY'S false representations, Diaz paid CONLEY a $50,000 advance fee in order to secure the financing from him. FirstScoop never received any funding from CONLEY.

15. Mr. R's Foods and LB Manufacturing were Connecticut-based food service companies. In 1998 and 1999, Mr. R's Foods was seeking approximately $5,000,000 in financing. Thomas Rotanelli was a principal in Mr. R's Foods and LB Manufacturing. On or about March 29, 1999, and relying on CONLEY'S false representations, Rotanelli paid CONLEY a $25,000 advance fee in order to secure the sought-after funding, which would be used by LB Manufacturing to further a joint business plan between Mr. R's Foods and LB Manufacturing. CONLEY never provided the funding.

16. Next Generation Marketing ("NGM") was a New York-based business involved in the distribution of alcoholic beverages. In 2000 and 2001, NGM was seeking approximately $5,000,000 in funding. John Shea was a principal in NGM. On or about January 18, 2001, and relying on CONLEY'S false representations, Shea paid CONLEY a

$25,000 advance fee in order to secure funding for NGM. NGM never received any funding from CONLEY.

17. DailyBulletin.com was a Chicago-based business established to develop a technology product for school districts which would allow rapid mass communication between schools and parents. In 1999, DailyBulletin.com was seeking $2,500,000 in funding. Michael Siegel was a principal of DailyBulletin.com. On or about February 15, 2000, and relying on CONLEY'S false representations, Siegel, using his own funds and funds supplied by associates, paid CONLEY a $25,000 advance fee. DailyBulletin.com never received any funding from CONLEY.

18. Shuttle America was a Connecticut-based airline. In 2000, Shuttle America was seeking approximately $10,000,000 in funding. On or about November 9, 2000, and relying on CONLEY'S false representations, Shuttle America paid CONLEY a $25,000 advance fee. Shuttle America never received any funding from CONLEY.

**Execution of the Scheme to Defraud**

19. On or about the dates set forth below, in the District of Rhode Island, the Eastern District of Virginia, the Northern District of Illinois, the Northern District of California, the Western District of Michigan, the Eastern District of New York, and elsewhere, for the purpose of executing the scheme and artifice to defraud described above in ¶¶ 1-18, the defendant JOHN J. CONLEY did knowingly and willfully cause to be transmitted in interstate

and foreign commerce writings, signs, signals and sounds, according to directions thereon, that is, wires and facsimile transmissions (fax), to the recipient individuals and entities and containing the material set forth below:

| Count | Date | Nature of Wire Communication |
|---|---|---|
| 1 | July 25, 2000 | Wire transfer of $30,000 from ComAuction in Michigan to CONLEY and a Conley entity in Rhode Island |
| 2 | March 7, 2001 | Fax re Various Matters from CONLEY in Rhode Island to Fred Polmanteer/ComAuction in Michigan |
| 3 | December 6, 2000 | Fax of LLC certificates in River City Investors, LLC from CONLEY in Rhode Island to Bruce Harrison in Virginia |
| 4 | July 16, 2000 | Fax re Voice Mail Message from CONLEY in Rhode Island to Velocity Trade and Mark Yates in Virginia |
| 5 | August 9, 2000 | Fax re Various Matters from CONLEY in Rhode Island to Velocity Trade and Mark Yates in Virginia |
| 6 | May 5, 2001 | Fax re References from CONLEY in Rhode Island to John Diaz and FirstScoop in California |
| 7 | June 12, 2001 | Wire transfer of $50,000 from John Diaz in California to CONLEY and a Conley entity in Rhode Island |
| 8 | October 29, 2000 | Fax re References from CONLEY in Rhode Island to Barry Lutin and Shuttle America in Connecticut |
| 9 | February 15, 2001 | Fax re Bombardier Contract from CONLEY in Rhode Island to Bruce Crocker, Barry Lutin, David Hackett, and Rick Steele in Connecticut |

| | | |
|---|---|---|
| 10 | July 21, 2000 | Fax re Due Diligence from CONLEY in Rhode Island to Michael Siegel and DailyBulletin.com in Illinois |
| 11 | August 6, 2000 | Fax letter from CONLEY in Rhode Island to Thomas Rotanelli and LB Manufacturing in Connecticut |
| 12 | September 23, 2001 | Fax letter re Various Matters from CONLEY in Rhode Island to Thomas and Mario Rotanelli in Connecticut |
| 13 | January 30, 2001 | Fax Memorandum from CONLEY in Rhode Island to Sy Feit and Jack Shea of NGM in New York |
| 14 | March 12, 2001 | Fax Memorandum re Fax Correspondence from CONLEY in Rhode Island to Jack Shea and Austin Beverage Corporation in New York |

All in violation of 18 U.S.C. §§ 1343 and 2.

ROBERT CLARK CORRENTE
United States Attorney

Kenneth P. Madden
KENNETH P. MADDEN
First Assistant U.S. Attorney
6-23-2005

Terrence P. Donnelly
TERRENCE P. DONNELLY
Assistant U.S. Attorney