UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
vs. ) CR. No. 05-079S
)
JOHN J. CONLEY )

FILED
FEB 13 2006
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION IN LIMINE

The defendant has filed, pursuant to Fed. R. Crim. P. 404(b), a Motion in Limine to bar the government from presenting certain evidence. The government objects.

The legal basis supporting the government's use of this evidence is laid out in the Government's Trial Memorandum, at pp. 17-19. The defendant complains about three specific areas identified by the government, as Rule 404(b) evidence, as well as the potential testimony from attorneys:

1. Other Victims. The defendant, as is his right, asked for notice of potential Rule 404(b) evidence, and the government notified him that it intends to call witnesses on behalf of five other victims not named in the indictment. They are:

1. Payton Roundhouse (Scott Ascher)
2. Spectra Sciences (Nabil Lawandy)
3. Terrain Systems (Trevor Van Horn)
4. Providence Hospitality Group (Jaime D'Oliveira/Ken Cusson);
5. Griffin Industries (Landon Baretto)

Summaries of what these witnesses are expected to testify to are

attached as Exhibits 1-5, respectively. Needless to say, the summaries amply demonstrate that, as to those five companies, Conley pursued the same fraudulent pattern as he did with the victims named in the Indictment: he falsely represented that he had the ability to fund the companies through a hedge fund or something similar, demanded advance fees for due diligence costs, and then strung the victims out with lulling communications, false promise, and excuses.

As the Exhibits make clear, although eight victims are named in the indictment, Conley victimized many more. The government may need to call some or all of these individuals in order to establish the defendant's state of mind, intent, plan or *modus operandi*, preparation, and absence of mistake. In this case, the government is alleging that Conley's "big lie" was that he had the *ability* to meet the funding needs of the victim companies, through his management of a $25 million hedge fund. Thus, the government is in the difficult situation of having to prove a negative: no such hedge fund existed. Due to lax government regulation, hedge funds were not required to register, so there is no list one can consult to determine if a hedge fund exists.

Therefore, the government will be seeking to prove this point circumstantially. One way to do that is to show, through sheer numbers, that Conley had a *modus operandi* with his victims, always coming to the same end: no company was ever funded. All were

treated to the same blend of promises, lies, delays, and excuses. Conley presented no objective evidence to any of them that his "hedge fund" actually existed. Conley's defense will be (at least in part) what he has already represented during voir dire: that he acted in good faith. A case on point confronted the exact same issue as this case. In United States v. Noe, 145 Fed. Appx. 15 (4th Cir. 2005), the defendant was charged in an advance fee scheme wire fraud case. He objected that five victims not named in the indictment were allowed to testify. The conviction was affirmed, with the Fourth Circuit finding

> that the testimony at issue was necessary to complete the story of Noe's "advance fee" scheme. Although Holland was the only victim identified in the indictment, the testimony of the other victims was relevant to show Noe's intent and that Holland *was not merely the victim of an unsuccessful business deal*.

Id. at 17 (emphasis added); see also United States v. Wineman, 60 Fed.Appx. 73, 76 (9th Cir. 2003) (testimony of five victims not named in mail fraud indictment admissible under Rule 404(b)).

2. Bounced Checks. The government expects to show that, in the course of executing the scheme to defraud, Conley would often lull a victim, or stall further action, by promising payment of the sought-after financing, or by promising repayment of the advance fees. Further, the government expects that, in most of these situations, Conley would often provide unfunded checks. For example, Conley promised Thomas Rotanelli of LB

Manufacturing $750,000 as a first instalment of the promised financing. To forestall Rotanelli's persistent efforts to obtain the money, Conley gave Rotanelli two checks totaling $750,000. After delivering the checks, Conley told Rotanelli not to deposit the checks, because anticipated payments to Conley[1] from elsewhere had not come through to fund the checks. Towards the end of his relationship with Conley, Rotanelli demanded $100,000 to settle any civil claims against Conley that Rotanelli might have. Conley agreed, and provided Rotanelli with a check for that amount, which promptly bounced.[2]

It is well-settled that mailings or wire communications which "were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendant[] less likely than if no mailing had taken place" are part of the execution of the scheme to defraud. United States v. Maze, 414 U.S. 395, 403 (1974); see also United States v. Lane, 474 U.S. 438, 451-52 (1986); United States v. Lopez, 71 F.3d 954, 961 (1st

---

[1] Conley told victims with monotonous regularity that he was waiting on wire transfers from other individuals, which he would use to fund his payments to victims. Then he would fax the individual, stating that the wire did not come through for some reason, usually blaming someone else.

[2] Indeed, the defendant has been charged in the state of Connecticut with violating that state's banking laws as a result of this check. The case is pending.

Cir. 1995); United States v. Pimental, 380 F.3d 575, 587-88 (1st Cir. 2004). Communications promising to repay money to victims can be lulling letters, if done to avoid lawsuits and complaints which could jeopardize the scheme. United States v. Otto, 742 F.2d 104, 108 (3d Cir. 1984) ("the defendant's letter [offering payment] was an attempt to buy time in order to avoid or at least postpone detection").

Here, the defendant's promises of payment, as well as his actual payments, are inextricably intertwined with the evidence of the scheme to defraud. Promises of payment, in particular when the "payment" was a worthless check, are indicative of an intent not to follow through with past promises; i.e., an intent to defraud.

3. Fonecash. Fonecash was a wireless credit card company. In the mid to late 1990s, the defendant fraudulently solicited individuals to invest amounts, usually around $5000, in Fonecash. The government believes Conley kept most of this money for himself. Fonecash never materialized, and investors lost all of their money, including those who gave money to Conley. One of the chief executives of Fonecash was indicted for securities fraud, ultimately being sent to prison.[3] The government does not

[3] At a time when Fonecash's stock was trading for 25 cents per share, CEO Dan Charbonneau offered an undercover FBI agent a bribe in order to buy a large block of shares at $2 per share, thus fraudulently inflating the stock price.

intend to directly develop this fraud by Conley, but, as the trial develops, evidence of the false solicitations by Conley may become relevant to explain some of the documents in Conley's possession, and to negate any inference that Conley indeed had real "investors" in his "hedge fund."

4. Attorney Testimony.

In his Motion in Limine, the defendant complains separately regarding potential testimony from attorneys and law firms which formerly represented the defendant's entities. The government relies on and incorporates the Government's Memorandum of Law in Support of its Objection to Defendant's Motion to Quash Subpoenas to support its contention that (1) the attorney-client privilege does not apply to this case, and (2) that the proffered evidence from the attorneys is highly relevant and necessary to the government's proof. Indeed, the evidence is directly relevant, and not subject to the limitations of Rule 404(b).

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

TERRENCE P. DONNELLY
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on this 13th day of February, 2006, a copy of the within Government's Response to Defendant's Motion in Limine was mailed, postage prepaid, to Edward C. Roy, Assistant Federal Defender, 10 Weybosset Street, Suite 300, Providence, RI 02903.

Lidana M. Steele